**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 14, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 05-10308
Summary Calendar
)))))))))))))))))))))))))))

WANDA ROBERSON,

Plaintiff-Appellant,

v.

GAME STOP/BABBAGE'S,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas

_____

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellant Wanda Roberson sued Appellee Game Stop, Inc.

("Game Stop"), alleging race discrimination under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2005) ("Title

VII") and 42 U.S.C. § 1981 (2005) and violation of the Family and

Medical Leave Act of 1993, 29 U.S.C. § 2601-2619 (2005)("FMLA").[1]

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

[1] Roberson also alleged violations of section 451.001 of the
Texas Labor Code, TEX. LAB. CODE ANN. § 451.001 (2005), but those
violations are not before us on appeal.

The district court granted Game Stop's motion for summary judgment, and Roberson appeals. We now affirm.

I. Background

Game Stop is a purveyor of video games and other entertainment software headquartered in Grapevine, Texas. Roberson, a black woman, began working at Game Stop in August of 1999 as a clerk in the Return-to-Vendor ("RTV") department at the company's Distribution Center. She received a pay raise one year later. In January 2001, Game Stop promoted Roberson to the position of RTV Lead, a promotion that brought with it a raise. In August 2002, Roberson received yet another pay raise. At various points, she requested training on the WMS computer system; she received only limited training. In November 2002, Stephanie McKee, a white woman employed in the RTV department, was promoted to co-Lead.

On November 11, 2002, after McKee was promoted, Roberson took FMLA leave to care for her injured son. While Roberson was absent, McKee performed Lead duties on her own. Roberson returned to work on December 9, 2002. She continued to perform her job as she had left it, and continued to work under the same manager, Cynthia Torres. Roberson heard rumors from co-workers that she was no longer a Lead, but no official action was taken. John Simmons, director of the Distribution Center, was aware of these rumors. There is no indication that Roberson's salary or benefits changed.

2

Four days later, Game Stop managers presented Roberson with a letter indicating their intention to eliminate one of the two Lead positions. The company had decided to move the defective check function, with which Roberson had been involved, out of the RTV department. The letter listed a variety of reasons why McKee would remain as RTV Lead, one of which was greater familiarity with the WMS computer system. The letter listed several options for Roberson: two Lead positions in other departments and a clerk position in the RTV department.

In the ensuing days, Game Stop managers met and determined that Roberson should not be demoted. They informed Roberson on December 19, 2002 that the Lead elimination plan would not be implemented and that she had the option to remain a Lead in the RTV department. Roberson was given until December 23, 2002 to decide, and elected to remain an RTV Lead.

On January 8, 2003, Lori Wolf, now manager of the RTV department, met with Roberson and McKee to inform the two that the position of Lead in the RTV department would be eliminated due to internal restructuring. Game Stop reduced the salaries of both Roberson and McKee. Roberson's salary remained higher than McKee's. The next day, McKee was given a raise to compensate her for specific computer duties. Both worked in the position of clerk. The position of Lead remained eliminated until mid-2004, when Sharrel, a black woman, was hired to be the Lead.

In April 2003, Roberson injured her foot. She took leave

3

again, and exhausted her FMLA-protected leave.  On June 18, 2003, Game Stop terminated Roberson for missing work.

## II. Procedural History

Roberson filed suit against Game Stop in federal court in the Northern District of Texas on November 20, 2003.  On January 2005, the district court issued an order granting summary judgment in favor of Game Stop.  On February 8, 2005, the district court granted Roberson's motion to reconsider with respect to the discrimination claims.  Upon reconsideration, the court again granted Game Stop's motion for summary judgment. Roberson filed her notice of intent to appeal the judgment on February 18, 2005.

## III. Standard of Review

We review a district court's grant of summary judgment *de novo*.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue as to a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party.  *Roberson v. Alltel Information Servs.*, 373

4

F.3d 647, 651 (5th Cir. 2004)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The evidence must be construed in a light most favorable to the non-moving party and doubts resolved in their favor. *Id.*

IV. Discussion

A. Title VII and § 1981 Discrimination Claims

We evaluate the discrimination claims together. Title VII makes it unlawful for a covered employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).[2] § 1981 grants all persons within the jurisdiction of the United States equal rights to "make and enforce contracts," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). Because the same fact pattern underlies both of Roberson's discrimination claims, the two are analyzed jointly according to the same standard of proof. *Roberson*, 373 F.3d at 651.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny establish a burden-shifting analysis to be applied to

---

[2] The parties do not dispute the fact that Game Stop is a covered employer as defined in § 2000e(b).

discrimination claims.[3]  To make out a prima facie case of discrimination under Title VII, a plaintiff must establish that she (1) is a member of a protected class, (2) is qualified for the position in question, (3) has suffered an adverse employment action and (4) has been replaced by a person who is not a member of a protected class.  *Pegram*, 361 F.3d at 281; *see also McDonnell Douglas*, 411 U.S. at 802-03.  These four elements create a presumption of discrimination, which the defendant may rebut by presenting a legitimate, nondiscriminatory reason for its actions.  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  If the defendant succeeds in rebutting the presumption, the plaintiff must establish that the defendant's proffered reason for its action is pretextual.  *Id*.

Roberson's claim satisfies the first two elements of the prima facie case.  She is black, and thus a member of a protected class.  The record also reflects Roberson's qualification for the position in question.  Roberson had worked in the RTV department at Game Stop since August, 1999 and was a Lead since January, 2001.  During this period, she received several raises, demonstrating some level of confidence on Game Stop's part in

---

[3] A separate framework for "mixed-motive" discrimination claims was established in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); Roberson does not raise such a claim.

Roberson's qualification.

Roberson's claim falls short with respect to the last two components of the prima facie claim. First, she fails to establish that she suffered any adverse employment action. "Our court has a strict interpretation of the adverse employment element" of the prima facie case for discrimination under Title VII. *Pegram*, 361 F.3d at 282. An adverse employment action must be an "ultimate employment decision" such as hiring, firing, promoting, demoting, compensating and granting leave. *Id*. "An employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action" for purposes of Title VII. *Id*.(*quoting Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)).

The effect of an action is evaluated according to an objective standard, and the personal preferences of the employee for one job over another are not considered. *Id*. at 283 (holding that plaintiff's transfer to a job "playing a supporting role" to a prior job is not an adverse employment action); *cf. id.* at 284 (determining that transfer to job with lower incentive pay may be an adverse employment action); *see also Shackelford*, 190 F.3d at 407 (maintaining that denial of computer training to plaintiff who only performed related duties occasionally is not an adverse employment action); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997)(stating that the alleged submission of unfair

7

and biased employee evaluations is not an adverse employment action); *Dollis v. Rubin*, 77 F.3d 777, 779-82 (5th Cir. 1995)(holding that refusal to allow an employee to attend training sessions did not constitute an adverse employment action).  In *Shackelford*, we reiterated our warning in *Mattern* not to expand the definition of adverse employment action to include "events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee –- anything that might jeopardize employment in the future."  190 F.3d at 407.

Roberson claims she was a victim of both a discriminatory demotion and replacement and a discriminatory failure to train. The record does not support either allegation sufficiently to survive summary judgment.  Roberson points to two instances she identifies as her demotion, the period between December 9 and December 19, 2002, after she returned from medical leave, and the elimination of the lead position on January 8, 2003.

In the December instance, Roberson returned to work from leave to rumors among co-workers that she had been demoted. Simmons, director of the Distribution Center, was aware of these rumors.  On December 13, Roberson met with superiors who presented her with a memorandum indicating their intention to eliminate one position of RTV Lead and offering her two other Lead positions or a clerk position in the RTV department.  From

8

that meeting until December 19, when the plan to eliminate one RTV Lead position was cancelled and Roberson was offered the option of remaining in her position, her benefits and compensation remained constant. Game Stop's plans to demote Roberson never came to fruition. In *Pegram*, we held that an actual transfer to a less prestigious position without any drop in benefits did not rise to the level of an adverse employment action. *Pegram*, 361 F.3d at 284. This case is similar; and Roberson's potential demotion, which also brought no drop in any benefits, cannot be considered adverse either.

In the January instance, the RTV Lead position was eliminated. Roberson and McKee, her white colleague, were both demoted to RTV clerk, with an attendant pay cut. The pay cut for each was equivalent. While this demotion could be construed as an adverse employment action, it did not involve the replacement of Roberson with a person who was not a member of a protected class. Thus, Roberson does not present a prima facie case of discrimination with respect to the January instance.

Game Stop's alleged denial of WMS computer training to Roberson also cannot be considered an adverse employment action. She argues that the failure to train led to her alleged demotion in December. This contention lacks merit for two reasons. First, it conflicts with our established precedent. In *Shackelford* and *Dollis*, the failure to provide training and the

refusal to allow an employee to attend a training conference, respectively, did not constitute an adverse employment actions. Roberson alleges that the ad hoc WMS training was more essential than the computer training in *Shackelford*. Even if this were true, Roberson's lack of training bore only on her potential demotion, not the ultimate elimination of the position. In *Shackelford*, we rejected plaintiff's argument that the denial of training that "tend[ed] to affect" employment status was enough to constitute an adverse employment action. 190 F.3d at 407. The connection between the WMS training and the actual adverse employment action, the January elimination of the RTV Lead position, is similarly weak in this instance.

Second, if the alleged potential demotion itself did not rise to the level of an adverse employment action, a refusal to provide training that allegedly led to the potential demotion could not either. Our precedent is clear that adverse employment actions are ultimate employment decisions, not the day-to-day decisions made in the context of the employment relationship. Roberson does not allege that her employer's decision not to provide her with training was a decision about benefits, compensation or employment. She merely claims it bore on later decisions that affected her. Roberson fails to establish a prima facie case.

B. <u>FMLA Claim</u>

10

Roberson complains that Game Stop failed to restore her to her position as RTV Lead in violation of the FMLA. The FMLA provides that any employee who takes leave under the Act, and timely returns, must either be restored "to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). An equivalent position is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status." 29 C.F.R. § 825.215(a)(2001). *See also Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 766 (2001). The FMLA establishes two exceptions to the reinstatement right, one of which is that the employee is not entitled to "any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3).

Roberson's failure to reinstate claim has two components. First, she argues that she was not restored to her position as an RTV Lead upon her return from leave. Second, she argues that her remaining a Lead upon return from leave was conditional on her receipt of WMS training. She claims this condition means the FMLA required Game Stop to provide the training to her.

Roberson complains that she was not reinstated to her RTV

11

Lead position when she returned from leave. Although it did not analyze the issue, the district court noted in passing its belief that an issue of fact existed as to whether Roberson was restored.[4] Roberson characterizes this comment as the district court's conclusion. We disagree both with Roberson's characterization of the comment, in reality a remark far short of a finding, and the substance of the comment itself. On summary judgment, we review questions as to whether there exist genuine issues of material fact *de novo*, albeit with deference to the nonmovant. *Jones v. Southern Marine & Aviation Underwriters, Inc.*, 888 F.2d 358, 360 (5th Cir. 1989). The record as is would not allow a reasonable trier of fact to conclude that Roberson was not restored to her position, just as it would not allow that trier to conclude she suffered an adverse employment action. When Roberson returned to her job from leave, she had the same pay and the same benefits. Game Stop informed Roberson of its intent to eliminate on RTV position, but that plan never came to fruition. The December 19 memorandum offered her the option to remain in her position. One cannot remain in a position one does not hold in the first place. There is no material fact issue as to whether Roberson returned to a job similar in every tangible

---

[4] The only language to this effect is the following dependent clause: "[a]lthough there exists a fact issue as to whether Plaintiff was restored to her original position . . . ." *Roberson v. Game Stop, Inc.*, No. Civ. 3:03-CV-2816-H, 2005 WL 139112, at *4 (N.D. Tex. Jan. 30, 2005)

respect to the one she left. While Roberson was demoted later, that demotion was part of a general restructuring that eliminated the position altogether. To the FMLA's reinstatement right, "a necessary exception is provided if the position has been eliminated." *Hunt v. Rapides*, 277 F.3d 766. Roberson is not entitled to keep a job that no longer exists.

Roberson also argues that Game Stop's failure to provide her with training constituted a failure to reinstate under the FMLA. She contends that her ability to remain a Lead was conditioned on her receipt of the training. But the record demonstrates that Game Stop restored Roberson to her job as RTV Lead and later eliminated the position altogether. McKee, who did receive the training, lost her job as Lead. There is no indication that any amount of training would have precluded Game Stop's decision to eliminate the position. Game Stop restored Roberson to the RTV Lead position, and thus her FMLA claim fails.

V. Conclusion

For the reasons above, we affirm the judgment of the district court.

AFFIRMED.

13