# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2011

No. 11-20199
Summary Calendar

Lyle W. Cayce
Clerk

WILLIE RAY JOHNSON,

Plaintiff–Appellant

v.

MANPOWER PROFESSIONAL SERVICES, INCORPORATED; AIR
LIQUIDE USA, L.L.C.,

Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2423

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

This case involves claims arising out of Appellant Willie Johnson's termination from his position as a contract recruiter for one of Appellee Air Liquide USA's divisions, Air Liquide Process & Construction ("ALPC"). Johnson obtained the position through Appellee Manpower Professional Services, a staffing company. Because we find that Air Liquide is Johnson's employer and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20199

that it failed to articulate a legitimate, non-discriminatory reason for Johnson's loss of overtime pay, we REVERSE the district court.'s grant of summary judgment as to Johnson's Title VII claim against Air Liquide and REMAND for further proceedings consistent with this opinion. Additionally, because we find that Air Liquide was Johnson's employer and Johnson's Title VII/§ 1981 claim against Manpower regarding pre-hiring screening procedures lacks merit, we AFFIRM district court's grant of summary judgment for Manpower as to the Title VII/§ 1981 claims. Finally, because we find that Johnson's retaliation claims have been waived, we AFFIRM the district court's grant of summary judgment to Manpower and Air Liquide on the FLSA retaliation claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October 2006, Manpower and Air Liquide entered into a staffing arrangement whereby Manpower would provide temporary employees to Air Liquide when Air Liquide required such employees. Under this arrangement, Manpower would recruit employees for Air Liquide and would handle the administrative and payroll issues, while Air Liquide would decide which of Manpower's recruits to hire and would manage and supervise them once hired. Air Liquide required a recruiter for its ALPC division, and Manpower was charged with filling that position.

Johnson, an African-American man, responded to Manpower's advertisement for the ALPC recruiter position. As a part of Manpower's application process, Johnson submitted to a background check and a drug test. Manpower then referred Johnson to Air Liquide, who hired him to fill the ALPC recruiter position. Johnson started at ALPC in April 2007.

For the first five weeks that Johnson worked at Air Liquide, he received overtime for those hours he worked in excess of forty per week, but in May 2007, Johnson stopped receiving the higher hourly wage for overtime hours. In October 2007, Johnson asked Jennifer Murphy, his Manpower supervisor and

a Caucasian woman, about why he was no longer receiving increased overtime pay. Murphy sent Johnson an email on October 15, 2007 stating that his status from "overtime non-exempt" had been changed to "overtime exempt" at the request of Dennis Schwartz, Air Liquide's director of finance and accounting. Johnson's overtime status was never restored. Johnson continued to work at ALPC receiving no extra overtime pay. In November 2007, Johnson's Air Liquide supervisor Roger Mayes, an African-American man, gave Johnson a good performance review, and in December 2007, Johnson received two extra days of holiday pay due to his good work at Air Liquide. Throughout this time, however, Air Liquide claims that various staff members expressed dissatisfaction with Johnson's work, specifically his pace of filling the positions for which he was recruiting.

On April 1, 2008, Murphy sent Air Liquide an email requesting a raise for Johnson. Around the same time, Manpower's legal counsel was reviewing its policy on overtime for workers in their professional business line—the same line of work that Johnson was in. Meanwhile at Air Liquide, John Andresen, a Caucasian man, replaced Mayes as Johnson's Air Liquide supervisor. Andresen received more negative feedback about Johnson's job performance. As a result, Air Liquide asked Manpower to replace Johnson. Johnson was terminated on April 29, 2008. Manpower filled Johnson's old position at ALPC with Patricia LaSalle, a Caucasian female. LaSalle was paid extra overtime pay and did not have to take a drug test or undergo a background check.

Johnson sued Manpower and Air Liquide in August 2008 under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for his back overtime pay. He later settled that suit with Manpower. As a part of that settlement, Manpower requested that Johnson execute a broad release of "any and all claims," including future claims, against Manpower; Johnson refused. He did, however, sign a "Limited Release" that "waive[d]" his claims against Manpower,

No. 11-20199

"its parent, subsidiary, related, and affiliated companies" of "any and all . . . claims . . . arising under the [FLSA] or any state of local law concerning payment of wages . . . includ[ing] but not limited to all claims for payment of wages, compensatory damages, liquidated damages, or attorney's fees arising under the aforesaid statutes."

Johnson then went to the Equal Employment Opportunity Commission and submitted charges against Manpower and Air Liquide.  He received a right to sue letter and commenced this action in July 2009, pursuing claims under Title VII, Section 1981, and the FLSA.  After discovery was completed, Manpower and Air Liquide both moved for summary judgment.  The district court granted both motions, *Johnson v. Manpower Prof. Servs., Inc.*, No. 4:09-CV-2423, 2011 WL 689375 (S.D. Tex. Feb 17, 2011), and Johnson timely appealed.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.  *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 124 (5th Cir. 2011).  Summary judgment is appropriate where the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a)); *see also* Fed. R. 56(c) (2010).[1]  In making this determination, all inferences are drawn in favor of the non-movant.  *Id.*  Our cases require that if the burden at trial rests on the non-movant, then the movant must "demonstrate an absence of evidentiary support in the record for the non-movant's case." *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (footnote omitted).  If the movant does that and "meets the

---

[1] Because the summary judgment motions in this case were filed before the effective date of the most recent amendments to the Federal Rules of Civil Procedure, the previous version of the Rule 56 was applied.

initial burden of demonstrating that there exists no genuine issue of material fact," then absent rebutting evidence by the non-movant, summary judgment should be granted. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317[, 322] (1986)). Moreover, the non-movant must do more than just raise "'some metaphysical doubt' as to the material facts" to prevail. *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 295 (5th Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III.  DISCUSSION

Johnson raised many claims in the district court but has only appealed three claims to this court: (1) his denial of overtime benefits because of his race under Title VII and § 1981, (2) his being subjected to a background check and drug test because of his race under Title VII and § 1981, and (3) his allegedly retaliatory termination under the FLSA.[2]

### A.    Title VII and Section 1981

Title VII makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Additionally, section 1981 affords all persons within the United States the "same right . . . to make and enforce contracts" without respect to race. *Id.* § 1981. Here, Johnson does not offer any direct evidence of discrimination but rather brings a claim based on disparate treatment. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court first established a framework for adjudicating Title VII discrimination claims where the plaintiff lacks such direct evidence.

---

[2] Johnson failed to specify in his complaint under what law he is bringing his retaliation claim. The district court treated Johnson's claim as one under the FLSA, and we do the same as Johnson has admitted in his brief to this court that his claim arises under the FLSA.

No. 11-20199

This is the same standard used to analyze claims of disparate impact discrimination brought under § 1981. *Payne v. Travenol Labs.*, 673 F.2d 798, 818 (5th Cir. 1982); *compare Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (setting out the elements of a prima facie case under Title VII) *with Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (setting out the elements of a prima facie case under § 1981).

Under that framework, an employee establishes a prima facie case of racial discrimination if he can demonstrate that

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee,* 574 F.3d at 259. Adverse employment actions under this test are limited to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating" and do not include employment actions that do not "affect job duties, compensation, or benefits." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). In establishing the similarly situated element, a plaintiff must identify an employee under "nearly identical" circumstances who did not have adverse employment action taken against him. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Our cases do recognize that the comparator can be someone employed at a different time than the plaintiff. *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

If the plaintiff proves his prima facie case, then "the inference of intentional discrimination is raised, and the burden of production shifts to the employer" to offer a legitimate, non-discriminatory reason for the adverse employment action. *Lee*, 574 F.3d at 259 (footnotes omitted). If the employer

No. 11-20199

provides such a reason, then the inference "drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981)). To prove pretext, plaintiff must rebut the non-discriminatory reason with "substantial evidence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

In determining whether a given defendant is an employer, we use the standards laid out in *Deal v. State Farm Cnty. Mut. Ins. Co.*, 5 F.3d 117 (5th Cir. 1993) and summarized in *Muhammed v. Dall. Cnty. Cmty. Supervision & Corrections Dep't*:

> Determining whether a defendant is an "employer" under Title VII involves a two-step process. First, the court must determine whether the defendant falls within Title VII's statutory definition of an "employer." Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . , and any agent of such a person . . . ." If the defendant meets this definition, the court must then analyze whether an employment relationship exists between the plaintiff and the defendant.
>
> To determine whether an employment relationship exists within the meaning of Title VII, we apply a hybrid economic realities/common law control test. The most important component of this test is the right to control the employee's conduct. When examining the control component, we have focused on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee. . . . The economic realities component of the test focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

479 F.3d 377, 380 (5th Cir. 2007) (footnotes and internal quotation marks omitted).

7

No. 11-20199

1.    **Overtime Denial**

Denial of overtime pay is an adverse employment action because it relates to Johnson's compensation. *Peagram*, 361 F.3d at 282; *cf. Shannon v. Bell Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (holding that denial of the opportunity to work overtime is an adverse employment action sufficient to make out a priam facie case under Title VII). Moreover, when using LaSalle, a Caucasian female who did receive overtime pay, as the comparator, Johnson has made out a prima facie case for discrimination. Because of this, we are required to determine who Johnson's employer was.[3]

Both Manpower and Air Liquide meet the statutory definition of an employer under Title VII so resolution of this question turns on the application of the hybrid economic realities/right to control test. The staffing arrangement agreement sets out the respective responsibilities of Manpower and Air Liquide. Manpower's responsibilities after it placed a worker at Air Liquide were:

> 1) Maintaining personnel and payroll records; 2) Paying, withholding, and transmitting payroll taxes; 3) Making unemployment contributions; 4) Handling unemployment and workers' compensation claims involving Assigned Employees with respect to compensation that [Manpower] has agreed to pay; 5) and removing any Assigned Employee at the request of [Air Liquide], provided there is a valid legal reason for doing so.

We consider first the factors that go towards the more important assessment of right to control. Manpower, while technically in charge of hiring and firing, does so only at Air Liquide's approval with respect to hiring and at Air Liquide's request with respect to firing. Moreover, while Johnson had supervisors at both Air Liquide and Manpower, it seems that Murphy, Johnson's

---

[3] The district court did not analyze who Johnson's employer was because it found that both Air Liquide and Manpower had provided legitimate, non-discriminatory reasons for denying Johnson overtime.

No. 11-20199

Manpower supervisor, merely responded to the requests of Johnson's Air Liquide supervisors—Schwartz, Mayes, and Andresen.   Additionally, Johnson's job performance was reviewed by Air Liquide.  To be sure, almost all of the factors under the economic realities test point to Manpower being Johnson's employer, as Manpower paid Johnson and withheld taxes on his behalf.  Nonetheless, because the majority of the more important right to control factors point to Air Liquide as Johnson's employer, we conclude that Air Liquide and not Manpower is Johnson's employer for the purposes of his overtime denial claim.  *See Deal*, 5 F.3d at 119.  Therefore, we affirm the district court's grant of summary judgment to Manpower as to Johnson's overtime denial claim against it.

Reviewing the summary judgment record reveals that Air Liquide offered no reason for changing Johnson's status to overtime exempt.  Although, as the district court concluded, there does not appear to be any evidence that Air Liquide's decision was based on Johnson's race, Johnson has raised an inference of discrimination by establishing a prima facie case under *McDonnell Douglas*. *Lee*, 574 F.3d at 259 (footnote omitted).  Such a showing requires the employer to give a legitimate, non-discriminatory reason for the adverse employment action, and where no such reason is given the employer cannot be awarded summary judgment.  *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 617 (5th Cir. 2007).   Therefore, we reverse the district court with respect to Johnson's overtime denial claim against Air Liquide.

### 2.     Background Check and Drug Testing – Manpower

As stated above, for an employment action to form the basis of either a Title VII or a § 1981 claim, it must be an "ultimate employment decision," which includes those affecting "job duties, compensation, or benefits."  *Pegram,* 361 F.3d at 282.  Although Johnson did show that LaSalle, his replacement, did not undergo these pre-hire screening procedures, these are not the type of actions that give rise to a disparate treatment claim, as neither the background check

nor drug test affected Johnson's duties, compensation, or benefits. Johnson admitted in his surreply to Manpower's motion for summary judgment that these pre-hiring screening procedures are not actionable under the standard set forth in *Pegram*. Therefore, we affirm the district court on this ground.

## B.    Retaliation

The FLSA makes it unlawful for anyone to "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA.]" 29 U.S.C. § 215(a)(3). The *McDonnell Douglas* burden-shifting framework has been adapted to apply to claims brought under the FLSA:

> First, a plaintiff must make a prima facie showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination.

*Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

### 1.    As to Manpower

The district court held that Johnson was precluded from claiming against Manpower because when he settled his first lawsuit, he signed a release that effectively waived any claim under the FLSA. Johnson admits that his claim arises under the FLSA; the only question is whether this release covers this FLSA retaliation claim. Texas rules of construction control the interpretation of this release. *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (tex. 1968) ("The effect of a contract is to be determined by the law intended by the parties to control, and in the absence of a contrary manifestation, the presumption is that the parties contract with reference to where the contract

was made."). When called upon to apply state substantive law, we look to the decisions of the state's highest court, and where there is no definitive answer, we "must determine, in its best judgment, how the state's highest court would resolve the issue if presented with it." *Holt v. State Farm Fire & Cas. Co.*

Releases can be broad or narrow, but regardless, "[i]n order to effectively release a claim in Texas, the releasing instrument must 'mention' the claim to be released." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). For a claim to be mentioned, it need only be able to be fairly encompassed in the language of the release. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 698 (Tex. 2000). "Under Texas law, a release is a contract," *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990), and when construing a contract, it is well-known that "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." [4] *Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)) (internal quotation marks omitted).

The relevant language of the "Limited Release" Johnson signed is:

---

[4] There are some Texas cases that seem to suggest that evidence beyond the four corners of the contract may be relevant to the inquiry: "To give effect to the parties' intent[,] a release will be construed in light of the facts and circumstances surrounding its execution." *Tricentral Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex. 1991). The cases where the Texas courts look beyond the express terms of the agreement are ones where a party has not known about a right at the time it was releasing it. Such a situation is distinct from what Johnson claims here—district court construed the release more broadly than he intended it. *See, e.g.*, *id*. at 221 (in a case dealing with a resulting trust, discussing how one party failed to disclose its claim to trust property to the other parties); *Williams*, 789 S.W.2d at 264 (in a case dealing with a release of medical claims arising from an automobile accident, discussing how the executing party to the release did not know of his injury at the time he signed the release). Johnson knew about his retaliation claim against Manpower before he signed the release because the basis of that claim was his termination, which happened nearly a year before Johnson signed the release. Therefore, we only need to look to the language of the release to see if Johnson's current FLSA claim is "mentioned."

No. 11-20199

> Willie Johnson . . . hereby waives, and fully releases, Manpower Inc., its parent, subsidiary, related, and affiliated companies from any and all liability, claims, demands, actions, causes of action, suits, grievances, . . . and remedies of any type that Johnson now has of may hereafter have from the beginning of time arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* or any state or local law concerning the payment of overtime wages. This Release shall include but not be limited to all claims for payment of wages, compensatory damages, punitive damages, liquidate damages, or attorney's fees arising under the aforesaid statutes.

Although stylized as a "Limited Release," the language is broad, releasing Manpower and all related company from "any and all liability [and] claims . . . arising under the [FLSA] or any state or local law concerning the payment of overtime wages." Johnson argues that this should be read as limited to FLSA claims "concerning the payment of overtime wages." Such a reading is incorrect. We conclude that the use of the disjunctive "or" between FLSA and the "any state or local law" means that the modifier "concerning the payment of overtime wages" only relates to and modifies the latter antecedent, "any state or local law," and not also FLSA. *See Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 134 n2. (Tex. App.—Corpus Christi 2006) ("Although the doctrine of last antecedent has been generally applied as a canon of statutory and constitutional interpretation, we see no reason why it should not be equally applicable to issues of contract construction."); *cf. Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580–81 (Tex. 2000) (applying the doctrine of last antecedent, which states "a qualifying phrase . . . must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied"). Therefore, Johnson's execution of the "Limited Release" does operate to preclude his FLSA retaliation claim and the district court is affirmed on this ground.

## 2.    As to Air Liquide

Johnson contends that the reason the district court found for Air Liquide was that Johnson presented insufficient evidence of pretext to rebut Air Liquide's proffered legitimate, non-discriminatory reason for terminating Johnson.  In fact, that was an alternative holding by the district court; the district court determined that Johnson failed to state a prima facie case for retaliation because Johnson failed to show his participation in any protected activity under the FLSA.  Johnson has presented no reasons for reversing the district court as to the failure to make out a prima facie case and therefore, his claims are waived.[5] Fed. R. App. P. 28(a)(9)(A); *see also Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

## IV.  CONCLUSION

Because we find that Air Liquide is Johnson's employer and failed to articulate a legitimate, non-discriminatory reason for Johnson's loss of overtime pay, we REVERSE the district court's grant of summary judgment as to Johnson's Title VII denial of overtime claim against Air Liquide and REMAND for further proceedings consistent with this opinion.  Relatedly, we AFFIRM the district court's grant of summary judgment for Manpower as to Johnson's Title VII denial of overtime claim because we find that Air Liquide was Johnson's employer.  As to Johnson's Title VII claim against Manpower regarding pre-hiring screening procedures, we find that these procedures are not ultimate employment decisions and therefore are not within the ambit of Title VII, and we AFFIRM the district court's grant of summary judgment for Manpower as to

---

[5] Johnson also alleged error based on the district court's allegedly improper admission of John Andresen's "declaration."  As that evidence only relates to Air Liquide's legitimate, non-discriminatory reason for terminating Johnson and Johnson has waived his retaliation claim by failing to brief the issue of prima facie case for retaliation, that point of error is moot.

this claim. Finally, because we find that Johnson's FLSA retaliation claims have been waived, by release as to Manpower and by failure to brief it as to Air Liquide, we AFFIRM the district court's grant of summary judgment to Manpower and Air Liquide on the retaliation claims.

AFFIRMED in part, REVERSED in part; REMANDED.