# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 2, 2016

Lyle W. Cayce
Clerk

No. 15-40162

PAUL D. BROOKS; ERICK GUILLORY; RICKY RUFFIN; SAMUEL W. JOHNSON; ELLIS E. BYRD; MICHAEL SPENCER; JONATHAN E. GREENWAY[1]; WAYNE E. JOHNSON,

       Plaintiffs – Appellants

v.

FIRESTONE POLYMERS, L.L.C., also known as Firestone; BRIDGESTONE AMERICAS HOLDING, INCORPORATED,

       Defendants – Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:12-CV-325

Before CLEMENT and HAYNES, Circuit Judges, and GARCIA MARMOLEJO, District Judge.[*]

PER CURIAM:[**]

---

[1] Various documents in the record spell this plaintiff's name as "Greenaway." However, our caption and the district court's caption spell it "Greenway."

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40162

Plaintiffs in this case, African-American employees or former employees of Firestone Polymers, L.L.C. ("Firestone"), appeal the dismissal of their claims against Firestone for employment discrimination, brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000h-6; 42 U.S.C. § 1981; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e); and Executive Order No. 11246.[2]  Plaintiffs allege that while employed by Firestone, racial discrimination resulted in, among other things, the denial of training and overtime opportunities for Plaintiffs and that abusive conditions created a hostile work environment. The district court dismissed these claims on Firestone's motions for summary judgment and entered final judgment against Plaintiffs, which they timely appealed.  For the following reasons, we AFFIRM.

I.

We review the grant of summary judgment de novo. *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). Where the nonmoving party would have the burden of proof at trial, the nonmoving party "must identify specific facts within the record that demonstrate the existence of a genuine issue of material fact." *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009).  The nonmoving party must

---

[2] The Plaintiffs in this case include Paul D. Brooks, Erick Guillory, Ricky Ruffin, Samuel W. Johnson, Ellis E. Byrd, Michael Spencer, Jonathan E. Greenway, and Wayne E. Johnson.  We will refer to them collectively as "Plaintiffs."  The original complaint included Bridgestone Americas, Inc., as a defendant, but the district court dismissed Bridgestone from the case, and the employees do not seek review of this order. *See Hughes v. Johnson*, 191 F.3d 607, 613 (5th Cir. 1999).

No. 15-40162

"articulate the precise manner in which the submitted or identified evidence supports his or her claim" to survive summary judgment. *Id.* (citation omitted).

## II.

Plaintiffs challenge the district court's grant of summary judgment because they claim the district court erred by: (1) concluding that Plaintiffs' failure to train claims did not involve adverse employment actions as required to plead a prima facie case for employment discrimination; (2) concluding that Plaintiffs did not meet their burden to highlight specific evidence supporting their denial of overtime claims; and (3) failing to consider Plaintiffs' aggregate experiences in dismissing Plaintiffs' hostile work environment claims.[3] Although Plaintiffs do not challenge the district court's conclusion that many of Plaintiffs' claims are time-barred, they contend that the district court should have granted their motion for reconsideration, in which they attempted to submit additional evidence regarding when Plaintiffs' claims were submitted to the Equal Employment Opportunity Commission ("EEOC").[4]

---

[3] Plaintiffs do not challenge the dismissal of their claims under the ADA, the Lilly Ledbetter Fair Pay Act, Executive Order 11246, or for discriminatory demotion and failure to promote under Title VII and Section 1981. We will not review these claims. *See Hughes*, 191 F.3d at 613 & n.13. Likewise, Plaintiffs abandoned any challenge to the district court's dismissal of their Title VII hostile work environment claims for failure to exhaust those claims before the Equal Employment Opportunity Commission, although their Section 1981 claims remain before us. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (noting that Section 1981 does not contain an exhaustion requirement).

[4] The district court did not abuse its discretion in declining to reopen its final judgment dismissing Plaintiffs' failure to train claims. Plaintiffs do not explain their failure to submit relevant evidence of timeliness to the district court for these claims, although they had the evidence when Defendants contested the timeliness of Plaintiffs' claims. The district court properly considered whether its judgment should be reconsidered due to previously omitted evidence under the test in *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004), and found that the limited importance of the omitted evidence, Plaintiffs' unexplained tardiness in submitting it, and the likelihood of prejudice to Firestone all weighed in favor of declining to reopen the case, *see id.* at 478–80. We defer to the district court's "considerable discretion" in making this decision, *id.* at 479–80, and leave in place the district court's unchallenged determinations that only certain claims remain for our review because many are time-barred.

3

No. 15-40162

*A. Plaintiffs' Failure to Train Claims*

Employment discrimination based upon race is unlawful under Title VII and Section 1981.[5]  To survive summary judgment, each Plaintiff in this case had to make a prima facie showing that he: (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably.  *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Here, the controversy as to the failure to train claims centers on the third prong, for which we require an "ultimate employment decision" or its factual equivalent.  *See McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).

In similar cases involving only tangential evidence of a potential effect on compensation, we have held that a failure to train does not constitute an ultimate employment decision or an adverse employment action.  *See, e.g.*, *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 406–07 (5th Cir. 1999) (holding a denial of training was not an adverse employment action covered by Title VII and affirming dismissal of the claim on summary judgment); *Hollimon v. Potter*, 365 F. App'x 546, 549 (5th Cir. 2010) (similar); *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 361 (5th Cir. 2005) (similar).[6]  Plaintiffs argue that a failure to train may constitute an adverse employment action and that these cases are distinguishable on their facts.

---

[5] Analyses for employment discrimination under Title VII and Section 1981 are often the same; therefore, absent relevant differences, we will consider these claims together.  *See Jones*, 427 F.3d at 992.

[6] Although *Hollimon* and *Roberson* are not "controlling precedent," they "may be [cited as] persuasive authority."  *Ballard*, 444 F.3d at 401 n.7 (citing 5TH CIR. R. 47.5.4).

Plaintiffs have failed to show that the denial of training in this case constituted an ultimate employment decision or its factual equivalent. Plaintiffs argue that the record shows their lack of training relative to non-African-American employees affected their compensation by decreasing their opportunity to earn overtime.  We have found such evidence insufficient because it only shows a potential, tangential effect on increased compensation. *See, e.g.*, *Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir. 1995) (affirming the dismissal of a plaintiff's denial-of-training claims, finding it insufficient that the denial "arguably might have [had] some tangential effect upon [an] ultimate decision[]"), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *Shackelford*, 190 F.3d at 406–07 (noting the plaintiff "produce[d] *no significant evidence* that a denial of such training [related mostly to her back-up duties] would 'tend to affect' her employment status or benefits" (emphasis added)).

Plaintiffs have also failed to specify facts that make the crucial link between each Plaintiff in this case and reduced overtime—and therefore reduced compensation—due to the lack of training, as compared to non-African-American counterparts.  *Cf. Roberson*, 152 F. App'x at 361 ("[I]f the alleged potential demotion itself did not rise to the level of an adverse employment action, a refusal to provide training that allegedly led to the potential demotion could not either.").  We affirm the district court's dismissal of Plaintiffs' failure to train claims. *See CQ, Inc.*, 565 F.3d at 273.

## B.  *Plaintiffs' Claims for Denial of Overtime*

The district court granted summary judgment on the overtime claims because it determined that Plaintiffs failed to produce evidence "that specific overtime positions were available that they were qualified for, that they were denied those positions, and that others outside the class who were similarly situated were treated more favorably."  We have no precedential authority in

our circuit establishing whether a denial of overtime constitutes an adverse employment action.[7]  We need not decide that question here.  Even assuming arguendo that a denial of overtime can be an adverse employment action, Plaintiffs fail to demonstrate issues of material fact supporting a prima facie case of disparate treatment for the denial of overtime.  *See Nasti*, 492 F.3d at 593.

Without relevant citations to the record, Plaintiffs state in a conclusory fashion that employment records and summary charts show that non-African-American employees received greater training than Plaintiffs, leading to better overtime and employment opportunities.  Plaintiffs do not cite evidence that Plaintiffs were qualified for specific overtime opportunities or evidence that similarly situated, non-African-American individuals were treated differently.[8]  Again relying on generalities, Plaintiffs did not compare each Plaintiff with an individual who received more training.  Plaintiffs therefore failed to raise a fact issue as to whether these individuals were truly similarly situated with respect to any denial of training or overtime as compared to Plaintiffs.  *See id.*; *cf. Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363–64 (5th Cir. 2013) (closely analyzing various characteristics of two employees before concluding they were similarly situated); *Shackelford*, 190 F.3d at 405–06 (similar).

---

[7] *Compare Johnson v. Manpower Prof'l Servs., Inc.*, 442 F. App'x 977, 982 (5th Cir. 2011) (holding that the "[d]enial of overtime pay is an adverse employment action because it relate[d] to [the plaintiff's] compensation" when the plaintiff's status was changed from "overtime non-exempt" to "overtime exempt" and he stopped receiving overtime pay), *with Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007) (holding that denying a request for overtime did not constitute an adverse employment action).

[8] We are not obligated "to sift through the record in search of evidence" to support Plaintiffs' case.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

No. 15-40162

In sum, in response to Firestone's motion for summary judgment on their denial of overtime claims,[9] Plaintiffs failed to proffer sufficient evidence to make a prima facie case that any Plaintiff suffered an adverse employment action. Plaintiffs therefore failed to meet their burden to show a genuine issue of material fact as to each element of their discrimination claim for denial of overtime, and the district court properly dismissed the claim. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

## C. *Plaintiffs' Hostile Work Environment Claims*

The district court held that the Plaintiffs bringing hostile work environment claims failed to make out a prima facie case that Firestone created such an environment. Plaintiffs argue the district court erred by analyzing each Plaintiff's claims individually, without aggregating the harm also alleged by other Plaintiffs as part of the totality of the circumstances. Even assuming arguendo an obligation to do so, we conclude that Plaintiffs have failed to establish a hostile work environment.

To establish a hostile work environment, each Plaintiff must prove he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting

---

[9] The district court did not abuse its discretion in giving Firestone an opportunity to file a second motion for summary judgment on the overtime claims in light of the confusion over whether Plaintiffs were making claims based on the denial of overtime, standing alone.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).  We analyze the hostility of a work environment in the totality of the circumstances, including examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  Plaintiffs have largely failed to highlight specific evidence supporting a prima facie case of a hostile work environment and, where they have, it fails to support recovery under this theory.

### 1. *Plaintiff Brooks*

Brooks claimed that on one occasion, he was asked not to use a restroom, which he perceived as a racially discriminatory request. Brooks used the restroom anyway, did not report the incident despite being asked about it by management, and testified that he viewed it as settled and that it did not recur. The district court properly concluded that these allegations do not support a hostile work environment claim.  *See Butler*, 161 F.3d at 269.

### 2. *Plaintiff Ruffin*

Ruffin complained about company video monitors showing images he found offensive.  Ruffin said he reported the incident and that the images were removed shortly thereafter, not to reappear.  Plaintiffs Spencer and Samuel Johnson also testified to seeing these images and to their removal.  The district court properly concluded this evidence is not sufficiently severe or pervasive to create a hostile work environment under Section 1981.  *Cf. Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 374 (5th Cir. 2013) (concluding that instances of alleged discriminatory conduct were isolated and neither severe nor pervasive enough make a viable hostile work environment claim).  Further, Plaintiffs' testimony establishes that, upon learning of the displays, management took prompt remedial action that ended the display of the

images.  *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004).

### 3. *Plaintiff Samuel Johnson*

Plaintiff Samuel Johnson alleges a hostile work environment based on racial slurs and "black faces" drawn in the bathroom stalls in the workplace. He testified that the foreman waited some time before painting over the stalls. Samuel Johnson further stated that he heard a manager say that as long as he was in charge of a certain unit, "there would be no blacks in the control room."

These offensive events, while reprehensible, establish only isolated incidents and offhand remarks, did not involve physical threats, were not apparently directly addressed to Samuel Johnson, and do not appear to have interfered with his work.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  We affirm the district court's determination that Samuel Johnson failed to make a prima facie case of a hostile work environment based on these allegations.  *See, e.g.*, *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 844 (8th Cir. 2002) (determining no severe or pervasive racial harassment occurred in circumstances involving frequent drawings in the men's restrooms, a racist poem, and other offensive remarks).

### 4. *Plaintiff Wayne Johnson*

Plaintiff Wayne Johnson apparently claimed a hostile work environment based on the American flag being flown upside down outside the Firestone plant in 2009 to protest President Obama's election.  As the district court noted, no evidence tied this incident to interference with Wayne Johnson's work. We affirm the district court's dismissal of Wayne Johnson's hostile work environment claim.

### 5. *Plaintiff Spencer*

Spencer alleges that, on a single occasion, "he found a miniature hangman's noose placed inside his hard hat at work."  He testified that no one

else was with him when he found it, that he does not recall telling others about it or showing others the noose, and that he took it home. He did not report it to a supervisor. Spencer testified that he found the incident "pretty upsetting" at the time. Yet, he did not testify that the noose incident or others changed the terms or conditions of his employment.[10]

The district court determined that the noose was not prima facie evidence of a hostile work environment because Spencer presented no evidence of how it affected the terms and conditions of his employment, it appears to have been an isolated incident, and there is no evidence Firestone knew or should have known about the incident. *See Harris*, 510 U.S. at 23; *see also Hockman*, 407 F.3d at 329. We agree that, although reprehensible, this conduct does not create a hostile work environment in these circumstances.[11]

*6. Considering the Totality of the Circumstances*

We look to the totality of the circumstances in determining whether an environment is hostile or abusive. *See Harris*, 510 U.S. at 23. Evidence about discrimination against other members of the protected class in the same workplace may sometimes be probative to reinforce allegations that harassment affected a plaintiff's terms and conditions of employment. *See generally Hernandez*, 670 F.3d at 651–54. In this case, even considering the incidents each Plaintiff experienced or knew about in the aggregate does not "transform what was an otherwise insufficient case of a hostile work environment . . . into one that could survive summary judgment." *Id.* at 654.

AFFIRMED.

---

[10] Spencer also testified that he saw the "black faces" painted on the bathroom stalls. He said that he complained and that they were painted over.

[11] Although *Scott* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard*, 444 F.3d at 401 n.7 (citing 5TH CIR. R. 47.5.4).