**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 9, 2012

Lyle W. Cayce
Clerk

No. 09-10183

RUBIN HERNANDEZ; JOHN KETTERER; ABRAM TREVINO,

Plaintiffs-Appellants

v.

YELLOW TRANSPORTATION, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

ON PETITION FOR REHEARING

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

No member of the panel nor judge in regular active service having requested that the court be polled on rehearing en banc, the petition for rehearing en banc is DENIED. *See* Fed. R. App. P. and 5th Cir. R. 35. Treating the petition for rehearing en banc as a petition for panel rehearing, the petition is DENIED. *See* Internal Operating Procedure to 5th Cir. R. 35. We withdraw our prior opinion, 641 F.3d 118, and substitute the following.

Employees at a terminal for a trucking company brought claims of race discrimination, retaliation, and hostile work environment against their

No. 09-10183

employer.  The district court granted summary judgment to the defendant on some of the individual claims and allowed an immediate appeal.  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Rubin Hernandez, John Ketterer, and Abram Trevino ("Plaintiffs") were employed at Yellow Transportation's Dallas terminal.  The evidence reveals a workplace that could be quite mean-spirited, crude, and insulting.  The issue for us to decide is whether federal rights were violated.

Our evidentiary summary relies on the facts admitted in the district court. Hernandez, who is Mexican-American, worked for the company from 1993 until 2007.  He claimed discrimination, retaliation, and a hostile work environment. As to the discrimination claim, Hernandez had a disagreement with a coworker, threatened him, and was fired for violating workplace policy regarding such conduct.  The coworker, who was not a passive victim in the altercation, exchanging derogatory remarks with Hernandez, received a lesser penalty.

To support the hostile work environment claim, Hernandez alleges he either personally experienced or witnessed race-based and non-race-based harassment while employed at Yellow Transportation.  The retaliation claim seeks to connect his termination with earlier formal claims and informal complaints about discrimination.

Ketterer, who is Caucasian, has been employed as a dock worker since 1990. He claims there was a hostile work environment.  He also says he suffered retaliation based in part on twice being fired and later reinstated after serving a suspension.  He alleges to have engaged in protected activity by picketing against Yellow Transportation's treatment of minorities.

Ketterer's hostile work environment claim also rests upon race-based and non-race-based harassment he either witnessed or personally suffered as a result of his association with minority employees.  He contends his protected status results from his association with African-American and Hispanic employees.

2

No. 09-10183

Trevino, who is Mexican-American, has worked as a dock worker since 1984. He brings only a claim of hostile work environment. He also claims to have experienced or witnessed race-based and non-race-based harassment while employed at Yellow Transportation.

Plaintiffs are members of the local chapter of the International Brotherhood of Teamsters. A collective bargaining agreement governs the terms of their employment. Plaintiffs filed charges with and received right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights.

They filed suit in the U.S. District Court for the Northern District of Texas, claiming race discrimination, retaliation, and hostile work environment. Plaintiffs' claims were brought under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Texas Commission on Human Rights Act, Tex. Labor Code Ann. §§ 21.001-21.556. The relevant claims under each of these statutes are analyzed under the same standard. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 991-92 (5th Cir. 2005); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999).

Yellow Transportation was granted summary judgment on all claims brought by these Plaintiffs. Other plaintiffs remained in the suit. A determination was made by the district court that there was no just reason for delay, and the ruling was made a final judgment. *See* Fed. R. Civ. P. 54(b). These three plaintiffs then filed a timely appeal.

Chief District Judge Fitzwater's opinion granting judgment is thorough and well-reasoned. *Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271, 2008 WL 5220569 (N.D. Tex. Dec. 12, 2008) (unpublished). In our analysis, we will refer to that opinion for a more comprehensive explanation of some allegations.

No. 09-10183

## DISCUSSION

We review a district court's grant of summary judgment *de novo* and apply the same standards as the district court. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163 (5th Cir. 2006). Summary judgment is proper if the pleadings and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (citation omitted). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005) (quotation marks and citation omitted).

Plaintiffs group their arguments of error around four of the dismissals by the district court: (A) Hernandez and Trevino's hostile work environment claims, (B) Ketterer's hostile work environment claim, (C) Ketterer's retaliation claim, and (D) Hernandez's retaliation and race discrimination claims.

Among other arguments, Yellow Transportation counters that plaintiffs at times highlight facts from the voluminous summary judgment record that were not identified for the district court and thus were not considered in ruling on summary judgment. The district court denied reconsideration of the summary judgment in part because some of the evidence these plaintiffs were citing had not been pointed out at the time of the original decision. A district court's decision on summary judgment is largely controlled by what the parties presented. If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search. Fed. R. Civ. P. 56(c); *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

No. 09-10183

*A. Hostile Work Environment Claims of Hernandez and Trevino*

As to their hostile work environment claims, Hernandez and Trevino allege the district court improperly refused to consider all the evidence of harassment, including harassment suffered by other Hispanics and by African-Americans, and instances of non-race-based harassment.

Besides being required to examine only the evidence pointed out to it in the extensive record, the district court also said it would consider admissible evidence only. It is a proper summary judgment objection "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

We start by examining what the evidence needed to support. To establish a claim of hostile work environment under Title VII, a plaintiff must prove he

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). It is undisputed that Hernandez and Trevino belong to a protected group as Hispanics. The other factors are not so clear.

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quotation marks and citations omitted). Workplace conduct "is not measured in isolation." *Id.* (quotation marks and citation omitted). In order to deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration." *Id.* This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks and citations omitted). To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted).

Both Hernandez and Trevino refer to numerous events of harassment, some directed at them and others at coworkers. The district court held there were only four incidents of harassment, two each against Hernandez and Trevino, that were severe enough to affect their employment at Yellow Transportation. We examine those first and then consider whether other relevant events were identified for the district court.

Hernandez was called a racially derogatory term on one occasion and once saw a poster or letter that was derogatory about Hispanics. Trevino once heard Mexicans referred to in a derogatory manner over a company radio and had seen a discriminatory posting or drawing. The district court found these incidents were "plainly offensive to a Hispanic person," but they could not support a hostile work environment claim because they were so few and occurred over more than a decade of employment. If in fact only two incidents such as these occurred over a ten-year period, this would not create a fact issue that the harassment was "sufficiently severe or pervasive" such that "an abusive working environment" had been shown. *See Ramsey,* 286 F.3d at 268.

The district court rejected much of Hernandez and Trevino's evidence. Whether that rejection was proper is the key appellate issue on these claims. In the district court's memorandum opinion, the irrelevance of one key incident was explained. Hernandez had been threatened with a knife by a coworker, Ron Green, but there was no evidence that the event had anything to do with race. Hernandez agreed that Green never used racial epithets towards him. At most,

the incident revealed that Green and Hernandez had a long-running dispute that would eventually lead to both men being disciplined.

Other evidence was rejected by the district court because even if it reflected hostility towards one of the plaintiffs, there was no evidence that the actions were based on race. A wide range of behaviors can make a workplace uncivil, but these plaintiffs must show as one of the factors for their Title VII claim that the events were based on race. *Ramsey,* 286 F.3d at 268.

Also rejected was proof of events that these plaintiffs had not personally experienced or that were directed to persons of a different racial background. The district court reasoned this way:

> To establish a hostile work environment claim, . . . a plaintiff must personally experience racial harassment. The court will therefore consider the harassment that a reasonable jury could find that plaintiffs experienced. *See, e.g.*, *Septimus v. Univ. of Houston,* 399 F.3d 601, 612 (5th Cir. 2005) (holding that harassment experienced by other women was irrelevant when determining whether harassment that plaintiff experienced was sufficiently severe or pervasive to establish hostile work environment claim).

*Arrieta*, 2008 WL 5220569, at *26. We examine the case the district court cited.

In *Septimus*, the plaintiff claimed she was subjected to a hostile work environment based on her sex, relying in part on evidence about treatment of other women. *Septimus*, 399 F.3d at 612. The plaintiff "did not personally experience most (if not all) of the conduct complained of by the other women." *Id.* The incidents directed at the plaintiff were "collectively insufficient" to avoid summary judgment. *Id.* "All of Septimus's other summary judgment evidence on this claim pertained to other women in the [Office of General Counsel], not Septimus, and therefore is not relevant." *Id.* Our opinion never identified the evidence regarding other women nor did it explain its reasoning. That makes it an uncertain precedent that evidence regarding other workers is never relevant. We at most know that the evidence was not relevant in that case.

*Septimus* also reminds us that harassment must have affected "a term, condition, or privilege" of the "victim's" employment. *Ramsey*, 286 F.3d at 268.

Hernandez and Trevino argue that the district court's conclusions resulted in the ignoring of substantial evidence of harassment. They refer us to one of our decisions in which we recognized the relevance of evidence of discrimination against other individuals in the plaintiff's protected class. *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1109-10 (5th Cir. 1995). That decision applied the Age Discrimination in Employment Act. *Id.* at 1108. We held that it was proper to exclude evidence allegedly showing discrimination on other grounds such as race or sex, but evidence of discrimination against other members of a plaintiff's protected class was admissible. *Id.* at 1109-10. Among our authorities for that holding were decisions involving age, race, and sex discrimination claims. *Id.* at 1110 n.9.

Another 1995 decision of this court held that under a state discrimination in employment statute involving workers with disabilities, evidence of the same sort of discrimination against workers other than the plaintiff was admissible. *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 & n.10 (5th Cir. 1995). That was because intentional discrimination had to be shown under the state statute, making relevant the evidence of a climate of that form of discrimination. *Id.* Conversely, anecdotes about discrimination or verbal harassment on other grounds were not relevant because there was too weak a correlation between the different forms of potential animus. *Id.* at 357-58.

We have held in the context of sex discrimination that harassment of women other than the plaintiff is relevant to a hostile work environment claim. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989). In fact, we agreed that "'a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive.'" *Id.* at 478 (quoting *Vinson v. Taylor*, 753 F.2d 141,

No. 09-10183

146 (D.C. Cir. 1985)). In *Waltman*, we also found extensive evidence of sex discrimination targeting the plaintiff, including "evidence that several different employees touched her in a sexual manner and directed sexual comments toward her," and "evidence of ongoing sexual graffiti on the walls, and in the elevator and bathroom." *Id.* at 477.

These precedents are examples in which a plaintiff for some purposes has been allowed to introduce evidence of discrimination of others. Not discussed in those opinions is whether evidence of harassment towards African-American employees can help support claims of a hostile work environment towards Hispanic employees. We have said that cross-category discrimination could be relevant when there is a sufficient correlation between the kind of discrimination claimed by a plaintiff and that directed at others. *See Kelly*, 61 F.3d at 357-58. We do not see that a specific holding is needed on this appeal regarding how evidence of the workplace environment for one category of employees can be used to support the claims under Title VII for another category. As we noted earlier, we have held that before a workplace environment may be found sufficiently hostile, a wide array of considerations are to be examined. *Ramsey*, 286 F.3d at 268. Among the facts that must be proven by the relevant evidence is that "the conditions of the victim's employment" have been altered by the harassment. *Id.*

The district court held that the examples of harassment towards African-American employees could not support the claim that there was a hostile work environment for Hispanic employees. Whether that conclusion is always correct we need not decide. It does appear, though, that if the evidence of the workplace environment for the employees of a plaintiff's race does not show frequent, severe, and pervasive hostility, then evidence of hostility towards a different racial group is not much support for the plaintiff's claim.

Hernandez and Trevino had evidence of specific incidences of workplace hostility towards African-American employees. Nonetheless, such incidents

were neither "physically threatening or humiliating" towards Hernandez and Trevino, nor did the harassment "unreasonably interfere[] with [their] work performance." *Id.* We agree with the district court that the evidence that was offered of a hostile environment for African-American employees did not transform what was an otherwise insufficient case of a hostile work environment experienced by these two Hispanic employees into one that could survive summary judgment.

We also do not consider the various incidents of harassment not based on race. *See id.* Hernandez and Trevino argue this court has examined incidents of non-race-based harassment when determining whether the harassment experienced under a hostile work environment claim was sufficiently severe or pervasive. *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393 (5th Cir. 2007). In that decision, though, the court examined a particular perpetrator's harassment that was not based on national origin in the context of his other acts of harassment that were. *Id.* at 400. The court determined that a factfinder could reasonably conclude a coworker's frequent banging on the glass partition of the plaintiff's office was motivated by animus related to the plaintiff's national origin because that same coworker had constantly called the plaintiff "Arab" for approximately a year. *Id.* at 400-01. Hernandez and Trevino did not have evidence that the alleged non-race-based harassment was part of a pattern of race-based harassment.

The district court properly granted summary judgment as to Hernandez and Trevino's claims of hostile work environment.

## B. *Ketterer's Claim of a Hostile Work Environment*

As we previously discussed, a hostile work environment claim requires (1) membership in a protected group; (2) harassment (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or

No. 09-10183

privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly. *Ramsey*, 286 F.3d at 268.

Ketterer, who is Caucasian, argues that he is a member of a protected class due to his association with African-Americans and Hispanics. He claims harassment based upon that association was sufficiently severe or pervasive as to affect his employment. The district court found that Ketterer did not establish a *prima facie* case of a hostile work environment because he failed to claim "an association with a protected group sufficient to bring him under the coverage of Title VII's substantive anti-discrimination provision." Specifically, "Ketterer alleges that he was discriminated against because of a general 'association with minorities.' He neither describes the extent of his association nor identifies the minorities with which he associates." Additionally, the district court found Ketterer had "not alleged harassment *based on his race* that was sufficiently pervasive to affect his employment."

There is substantial evidence in the record that in this workplace, many workers treated other workers profanely, cruelly, and with hostility. To survive the employer's motion for summary judgment, though, Ketterer also needed to point to specific facts in the record to demonstrate that the company knew or should have known that Ketterer was harassed because of a reason that could be remedied under Title VII, namely, his association with minorities. *Jones*, 82 F.3d at 1338.

There is evidence that Ketterer was harassed, at least in part, for reasons unrelated to his association with his minorities. He had disagreements with union officials about a work slow-down and may have antagonized certain coworkers. Yellow Transportation's acquiescence does not violate Title VII. *See* 42 U.S.C. § 2000e-2(a)(2). Ketterer describes an incident in which a supervisor explained, using a racial slur, that he liked NASCAR because African-Americans

do not. Ketterer, who described the statement as an off-the-wall comment, does not explain how the statement harassed him.

There are also allegations concerning the conduct of his coworkers. The allegations are not accompanied by any facts to show that the company knew of the comments. Far from presenting evidence that the company knew or should have known of the harassment, he specifically denied that he told management.

Ketterer's deposition contained an exchange about various incidents.

Q. Now, and you never complained to Yellow either about the firecracker incident and the racial slur used then or the other incident during which you were called a racial slur. You never complained to Yellow, correct?

A. No. And it doesn't do any good because the incidents I complained about, Tammy Hardge turned them all around. [Hardge was a Human Relations employee.] Now, what would have happened is they would have said, "Oh" – there would have been more of them than me. And they said, "Oh, your only friend is Abe Trevino." And then – so that's it.

A. Just like you've been saying.

Q. You never complained to Yellow about either of these incidents, correct?

A. To the best of my recollection, no.

Q. Okay. Are there any other employees who you believe harassed you because you – because of your association with minorities or because you filed this lawsuit?
A. Frank Haskle.

Q. Haskle?

A. Yes. Frank Haskle.

Q. And when did Frank Haskle harass you?

A. Oh, on and off the last four years.

No. 09-10183

Q. And what did he do to harass you?

A. He called me a "nigger lover," too.

Q. And when did he do that?

A. Oh, because my association with the black people. He's a – he's a men – he's a midnight hostler and associated with the black people. He called me a "nigger lover." It was about, oh, gee, maybe last year, yes.

Q. And yet you never complained to anyone at Yellow about that, did you?

A. No.

Q. Told your lawyer, but didn't tell Yellow. Is that fair?

A. I told my lawyer about it, yes; and we have that in the complaint, yes.

We have not quoted all of Ketterer's complaints, but he never asserts he complained to management. As part of the quoted testimony reveals, he alleged that at some previous time he had complained and the human relations representative was nonresponsive. An employee's decision to refrain from informing the employer about the harassment will be excused "once it becomes objectively obvious that the employer has no real intention of stopping the harassment," as such reporting is "wasted motion." *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 300-01 (5th Cir. 2001). The plaintiffs collectively assert that any complaint would have been futile because "everyone" knew about the harassment but no one did anything to stop it. To support this assertion, the plaintiffs direct us to evidence about the prevalence of graffiti concerning minorities. Yet Ketterer must present evidence that complaints about *his* harassment would have been futile. *See id.* at 301. He has not. The evidence shows that Yellow Transportation conducted investigations in the past when

No. 09-10183

Ketterer reported harassment and his one reference to Hardge's having "turned them all around" gives the court nothing on which to make an objective finding of futility.

For its part, Yellow Transportation asserts that it was never informed of the harassment. We agree there is no evidence that it was aware of any of the incidents on which Ketterer sues. Despite any lack of actual knowledge, an employer may have constructive knowledge when the harassment is pervasive. *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999). A holding that an employer had constructive knowledge will be less likely if it had in place a procedure by which employees could report instances of harassment. *Id.* Ketterer acknowledges that Yellow Transportation provided him with an employee manual which explained the procedures an employee should follow when harassed. Ketterer admits that he did not follow these procedures.

Ketterer argues that he was frequently called by a profane scatological word by other coworkers, including over the company radio. There is evidence that management listened to the radio. While it may be that Yellow Transportation at least should have been aware that Ketterer was being insulted frequently, he fails to identify evidence to support that management would have known that these insults were based on his association with minorities. Rather, Ketterer admits that coworkers of all races refer to him by that name. The record contains an explanation as to how Ketterer "earned" that name, and there is no Title VII component to the story.

There are no identified facts that could lead to the conclusion that one of the most pervasive aspects of the harassment – the nickname – was in response to his association with minorities. This fact distinguishes this case from another in which the court has allowed a suit to proceed. *See Waltman,* 875 F.2d at 478. There, we reversed a district court's decision to grant summary judgment to the employer because the employee alleged "that there was sexual graffiti directed

14

at her in numerous locations." *Id.* Ketterer has not explained how frequent use of this nickname notified management, as the sexual graffiti did in *Waltman*, that he was being harassed for a reason prohibited by Title VII.

Another coworker alleges that he saw graffiti in one location which used a racial slur in relation to Ketterer. There is no evidence that similar graffiti was at multiple locations. One item of graffiti is not sufficient when the other circumstances are taken into consideration.

The record fully supports that the Yellow Transportation facility was not a pleasant place to work. As the facts show, the reasons for the hostility were complicated and ever-changing. Much of the harassment stemmed from conduct not prohibited by Title VII. In these circumstances, insufficient facts have been identified to show that Yellow Transportation should have known Ketterer was harassed because of his association with minorities. The district court did not err by granting Yellow Transportation's motion for summary judgment.

## C. Ketterer's Retaliation Claim

Ketterer argues the district court improperly held that he had not established a *prima facie* case of retaliation. According to Ketterer, he suffered various forms of retaliation for engaging in protected activity.

A plaintiff establishes a *prima facie* case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008). If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996) (citation omitted). If the defendant presents evidence that supports

No. 09-10183

that it acted properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action. *Id.* at 305 n.4.

The district court determined that Ketterer engaged in protected activity when he picketed against Yellow Transportation's treatment of minorities. This finding is not in dispute. As to the next two elements of a *prima facie* case, the district court found that Ketterer did not suffer adverse employment actions, and that he failed to offer evidence he would not have been retaliated against "but for" his engagement in protected activity. Ketterer's appeal focuses on these two elements of the inquiry.

An adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (quotation marks and citation omitted). In determining whether an adverse employment action occurred, we focus on the final decisionmaker. *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002) (citation omitted). The actions of ordinary employees are not imputable to their employer unless they are conducted "in furtherance of the employer's business." *Long*, 88 F.3d at 306 (quotation marks and citation omitted). There must, however, be "a direct relationship between the allegedly discriminatory conduct and the employer's business." *Id.*

On appeal, Ketterer alleges to have suffered the following adverse employment actions: (1) harassment by coworkers; (2) increased workload; and (3) reinstatement without back-pay. We examine each in turn.

### 1. Harassment by coworkers

Ketterer advances various incidents of coworker harassment, including name-calling, physical intimidation, false accusations, vandalization of his belongings, verbal threats, and observing violence and illegal behavior. None of

these alleged incidents, however, were perpetrated by anyone other than ordinary employees, nor was the alleged harassment committed in furtherance of Yellow Transportation's business.  *See id.*

Ketterer urges us to abandon our framework for coworker retaliation as articulated in *Long*, and adopt the approach taken by the "majority of our sister circuits[,]" which hold "that Title VII protects against coworker retaliatory harassment that is known to but not restrained by the employer."  *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008).  "This court adheres strictly to the maxim that one panel of the court cannot overturn another, even if it disagrees with the prior panel's holding."  *Macktal v. U.S. Dept. Of Labor*, 171 F.3d 323, 328 (5th Cir. 1999) (citation omitted).  We, therefore, must decline this invitation.

### 2.  Increased workload

Ketterer alleges that after he began picketing, he received more, heavier, and dirtier work.  The district court found these allegations were not supported by evidence nor had Ketterer established a causal link.  His effort to do so now is too late.  *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### 3.  Reinstatement without back-pay

Ketterer contends that he was discharged after a physical altercation with a coworker and reinstated without back-pay, while his coworker received back-pay.  The district court found that Ketterer had not establish a *prima facie* case, but even if he had, he failed to offer evidence of "but for" causation to rebut Yellow Transportation's legitimate, nondiscriminatory reason for its actions; that is, Ketterer's violation of workplace policy.

Because we can affirm a district court on any basis established by the record, we need only look to the summary judgment evidence to confirm that, in fact, Ketterer did not demonstrate that "but for" his participation in protected activities, he would not have been reinstated without back-pay.  *See Long*, 88

F.3d at 305 n.4.

To defeat a motion for summary judgment, a plaintiff must demonstrate "a conflict in substantial evidence on [the] ultimate issue" of "but for" causation. *Id.* at 308 (quotation marks and citations omitted). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quotation marks and citation omitted). Temporal proximity, standing alone, is not enough. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Ketterer has not established a conflict in substantial evidence on this issue.

The district court properly granted summary judgment.

## D. Hernandez's Discrimination and Retaliation Claims

### 1. Discrimination

Hernandez alleges that he was fired because of his race. He argues the district court erred in granting summary judgment on his discrimination claim by failing to consider evidence of pretext.

The discrimination claim derives from an incident between Hernandez and Green that began when, during roll call, someone yelled at Hernandez, "Go with your girlfriend Ketterer." After exchanging derogatory remarks, Hernandez threatened Green. Green complained to management, and both Hernandez and Green were suspended. Yellow Transportation conducted an investigation that resulted in warning letters for the initial exchange of remarks. In addition, Hernandez was fired for threatening Green, which was a violation of workplace policy. A formal grievance committee upheld the termination.

To survive summary judgment on a claim of employment discrimination based on circumstantial evidence, the plaintiff first must establish a *prima facie* case. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (citation omitted). Once offered, the burden shifts to the employer to provide evidence

No. 09-10183

of a "legitimate, nondiscriminatory reason for the" adverse employment action. *Id.* (quotation marks and citation omitted). After the employer meets this burden, "the plaintiff must show that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quotation marks and citation omitted). The plaintiff may overcome this hurdle by showing "that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quotation marks and citation omitted).

The district court assumed without deciding that a *prima facie* case was established. That assumption is not an issue on appeal. Yellow Transportation's explanation for terminating Hernandez – that he violated the workplace policy – is also not at issue. The dispute concerns the final step in the analysis.

Hernandez argues that the following evidence establishes pretext: (a) similarly-situated employees were treated more favorably; (b) harassment by coworkers; and (c) the failure of a supervisor to respond to Hernandez's complaint against Green. We analyze each of these allegations to determine whether Hernandez has shown an issue of material fact that Yellow Transportation's nondiscriminatory explanation for firing Hernandez is false.

*a. Similarly-situated employees treated more favorably*

Hernandez provides examples of employees who violated similar policies but were not fired. He failed, though, to seek to demonstrate that any of the employment actions "were taken under nearly identical circumstances[,]" including that Hernandez and the other employees shared the same job or responsibilities, reported to the same supervisor, had "essentially comparable violation histories[,]" and, most importantly, that the "conduct that drew the adverse employment decision [was] nearly identical." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quotation marks and citations omitted).

19

No. 09-10183

### b. *Harassment by coworkers*

In addition to the incidents of harassment contained within his hostile work environment claim, Hernandez provides four additional examples of coworker harassment. These include allegations that he was called derogatory names by Green, that a group of Caucasians interfered with his work, that his name was written on the back of a trailer, and that Caucasian coworkers distracted him while he worked.

Hernandez does not offer evidence that the individuals responsible for his termination were tainted by discriminatory animus, or that his coworkers "possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltell Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quotation marks and citations omitted); *see also Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011). Rather, Hernandez merely states that he raised a fact issue that Yellow Transportation's managers condoned his coworkers' harassment. He does not cite evidence of this claim or reference the record. It is not our duty to scrutinize the record on appeal. *Jones*, 82 F.3d at 1338. Further, Hernandez does not lodge any such allegation against members of the formal grievance committee, which upheld Yellow Transportation's decision to fire him.

### c. *Supervisor's failure to respond to Hernandez's complaint*

Hernandez contends that years before he was fired, Green pulled a knife on him and said, "this is for you and your sons." Upon complaining to management, Hernandez alleges a supervisor told him he would get in trouble if he pursued the claim. Hernandez did not present evidence linking this episode with his termination, nor has he demonstrated that race was a factor in the supervisor's statement. A rational trier of fact could not find that race, rather than violating the workplace policy, was the actual reason for his termination. *See Patel v. Midland Mem'l Hosp. and Med. Ctr.*, 298 F.3d 333, 342-43 (5th Cir. 2002). Summary judgment on this claim was proper.

No. 09-10183

## 2. *Retaliation*

Hernandez challenges the district court's grant of summary judgment on his retaliation claim. He argues that his discharge was retaliation for an array of protected activities, including picketing against Yellow Transportation's treatment of minorities, filing an EEOC complaint, joining a lawsuit against Yellow Transportation, and complaints of unfair job assignments, coworker harassment, inequitable treatment, and failure to investigate prior complaints.

The issue on appeal concerns whether Hernandez would not have been fired "but for" his participation in protected activities. As previously discussed, a plaintiff may avoid summary judgment on "but for" causation by demonstrating "a conflict in substantial evidence on this ultimate issue." *Long*, 88 F.3d at 308 (quotation marks and citations omitted). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quotation marks and citation omitted).

On appeal, Hernandez presents two arguments to demonstrate "but for" causation. His first argument is that his firing was in close temporal proximity to his participation in protected activities. "But for" causation, however, cannot be established by temporal proximity alone. *See Strong*, 482 F.3d at 808.

Hernandez's second argument is that he presented evidence of pretext, which in addition to temporal proximity, is sufficient to establish "but for" causation. *See Shackelford*, 190 F.3d at 408-09. According to Hernandez, the following is evidence of pretext: (a) Yellow Transportation's investigation into the incident with Green was not governed by normal procedures; (b) the post-termination grievance process was unfair; (c) Green and Hernandez were treated unequally; and (d) similarly-situated employees were treated more fairly.

No. 09-10183

### a. *Investigation into incident with Green*

Hernandez's allegations regarding the investigation into his encounter with Green were not raised in the district court as to this claim. It is too late to identify them on appeal. *See Forsyth*, 19 F.3d at 1537.

### b. *Procedures governing post-termination grievance process*

Hernandez's allegations regarding the procedures governing his post-termination grievance process are unsupported by evidence and merely speculative. *See Ramsey*, 286 F.3d at 269 (holding that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment) (citation omitted).

### c. *Disparity in treatment between Green and Hernandez*

Hernandez alleges that following his incident with Green, he was formally removed from service pending the grievance hearing, while Green was permitted to take vacation. In addition, Green only received a warning, whereas Hernandez was fired. Accepting these facts as true, we conclude that they fail to establish anything other than that Yellow Transportation treated Hernandez's threats more severely than the initial verbal exchange. They do not establish "but for" causation.

### d. *Similarly-situated employees treated more favorably*

In evaluating this claim, we follow the district court's lead in giving considerable weight to Hernandez's admission that he committed the acts for which he was discharged, that those acts violated the workplace policy, and the formal grievance committee upheld his discharge. Nothing Hernandez presents contradicts Yellow Transportation's offered reason for firing him.

Hernandez has failed to establish that Yellow Transportation unlawfully retaliated against him. Summary judgment was proper.     AFFIRMED.