**REVISED September 30, 2020**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10761

ROBERT COLLIER,

      Plaintiff - Appellant

v.

DALLAS COUNTY HOSPITAL DISTRICT, doing business as Parkland
Health & Hospital System,

      Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
April 9, 2020

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-3362

Before KING, JONES, and COSTA, Circuit Judges.

PER CURIAM:[*]

    Robert Collier, an African American employee in Dallas County's
Parkland Health and Hospital System, filed suit under Title VII after he was
allegedly fired for insubordination. Collier claims that he was in fact fired in
retaliation for complaining of racial discrimination and that the hospital was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 19-10761

a hostile work environment. The district court granted summary judgment for the hospital, finding that the rationale given for Collier's termination was not pretextual and that his working environment was not sufficiently abusive to constitute a hostile work environment. We affirm.

## I.

## A.

Collier worked as an operating-room aide in Dallas County's Parkland Health and Hospital System (Parkland) between January 2009 and July 2016, where he mainly prepared operating rooms for patients. In August 2014, Collier received a written warning after he allegedly failed to follow the procedures for proper radio usage and failed to notify his supervisor when he was leaving the department. A year later, Collier received a "Final Warning" after he allegedly failed to respond to multiple radio calls and punched a wall. Collier denies being called on his radio during these occasions but admits to punching the wall.[1]

Around this time, Collier complained about racial discrimination at Parkland. For example, he submitted complaints to Parkland's telephone hotline stating that African American employees were treated worse than Hispanic and Caucasian employees, and he later filed another internal complaint making similar allegations. Collier also reported that the N-word was scratched into an elevator, and that two swastikas were drawn on the wall in a storage room that he frequented. Collier reported this graffiti to Richard Stetzel, who oversaw Collier's supervisor, Javier Reyes, and to human

---

[1] Parkland has acknowledged that the radios were not always working, and Collier notes that he was once nearly disciplined for not using his radio on a day when he had not been given access to one.

2

## No. 19-10761

resources.[2] Collier also claimed that a nurse called him "boy" and that other nurses called other African American employees "boy" as well.

Parkland maintained that, although it investigated numerous complaints from Collier, none of them involved racially offensive comments or graffiti. Nonetheless, Stetzel acknowledged that he was aware of the swastikas in the storage room and that he had planned to paint over them within six months of first seeing them.

In June 2016, Collier had a disagreement with Reyes, his supervisor, which eventually led to his termination. According to Reyes, Collier refused to work in Pod D, one of the four stations where operating-room aides worked, and Collier later cursed at Reyes, threatened him, and "became very aggressive, violent, [and started] hitting the wall."[3] Other nearby employees confirmed that Collier refused to work in Pod D, despite their attempts to convince him to do so, and that Collier exhibited threatening and aggressive behavior. The Dallas County Hospital District Police Department was summoned, and Collier was issued a citation for assault and was escorted off the property.

Following this incident, Parkland concluded that Collier had been insubordinate by refusing to work in Pod D and failing to follow the instructions of two additional supervisors, which ultimately "impact[ed]

---

[2] The N-word remained for several months before being scratched out, and the swastikas remained for approximately eighteen months.

[3] Collier acknowledges disagreement with his supervisor but denies being insubordinate. For example, Collier's brief states that "Defendant terminated Plaintiff in June 2016 due to an argument he had with Supervisor Reyes regarding Supervisor Reyes continually assigning Plaintiff to isolated Pod D, despite Defendant's policy to rotate the ORAs through the different Pods."

No. 19-10761

patient care." Four Parkland officials, none of whom were Reyes, decided to terminate Collier, and he was fired on July 12, 2016.[4]

**B.**

In December 2017, Collier filed suit against Parkland for violations of Title VII of the Civil Rights Act and the Texas Employment Discrimination Act, claiming racial discrimination and retaliation. As noted, Collier claimed that he was retaliated against for reporting racial discrimination and claimed that the presence of two swastikas and the N-word on hospital walls, as well as being called "boy," made Parkland a hostile work environment.

Parkland moved for summary judgment, which the district court granted. The district court found that Collier could not establish either: (1) that Parkland's rationale for terminating Collier—i.e., insubordination—was pretextual; or (2) that Collier's working environment "was sufficiently hostile or abusive to create a racially hostile work environment." This appeal followed.

**II.**

"We review a district court's grant or denial of summary judgment *de novo*, applying the same standard as the district court." *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007)). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Robinson*, 505 F.3d at 366. Accordingly, all "reasonable

---

[4] Employee Relations Advisor CaSaundra Henderson, Employee Relations Director Arthur Ferrell, Interim Vice President Brandon Bennett, and Director of Nursing Richard Stetzel were responsible for Collier's termination.

4

No. 19-10761

inferences should be drawn in favor of the nonmoving party." *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

### III.

### A.

To establish a prima facie case of retaliation under Title VII, a plaintiff must indicate that: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (describing the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once a prima facie case is made, the employer must then "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *Id.* at 557. This burden is "only one of production, not persuasion, and involves no credibility assessment." *Id.*

If the employer satisfies this burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *Id.* This requires the plaintiff to "rebut each . . . nonretaliatory reason articulated by the employer," *id.*, and to establish "that the adverse action would not have occurred 'but for' the employer's retaliatory motive," *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013); *see also Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815-16 (5th Cir. 1993) ("To demonstrate pretext, the plaintiff must do more than cast doubt on whether the employer had just cause for its

decision; he or she must show that a reasonable factfinder could conclude that the employer's reason is unworthy of credence." (cleaned up)).

### B.

We conclude that Parkland offered legitimate, nondiscriminatory reasons for Collier's termination, such as insubordination. *See, e.g.*, *Rochon v. Exxon Corp.*, No. 99-30486, 1999 WL 1234261, at *3 (5th Cir. Nov. 22, 1999) ("Violation of a work-rule is a legitimate, nondiscriminatory reason for termination"). Accordingly, to prevail on his retaliation claim, Collier must demonstrate that these rationales were pretextual, *see McCoy*, 492 F.3d at 557, and that his complaints of racial discrimination were a but-for cause of his termination, *see Feist*, 730 F.3d at 454.

Although there are disputed facts regarding his radio usage and his disagreement with Reyes, Collier indisputably punched a wall, received a citation for assault, and was determined to be insubordinate.[5] Collier may quarrel with the specific details of these events, but he ultimately admits that insubordination could constitute a terminable offense, and he offers no evidence indicating that Parkland's rationales were pretextual. *Cf. McCoy*, 492 F.3d at 557 ("[T]he plaintiff must rebut each . . . nonretaliatory reason articulated by the employer.").

Collier does not, for example, assert that other employees who were similarly insubordinate received different treatment, or that other similarly situated employees were fired for pretextual reasons. While Collier alleges that Reyes, his supervisor, had a retaliatory intent, four other individuals were

---

[5] Collier insists that he was not insubordinate, but there is not a genuine dispute of material fact regarding whether Parkland could have concluded that he was insubordinate. As noted, several observers reported his insubordination, which influenced Parkland's decision to terminate him. Collier does not refute these witness reports and admits to arguing with his supervisor. Such conduct qualifies as insubordination. *See, e.g.*, *Insubordination*, *Black's Law Dictionary* (11th ed. 2019) ("An act of disobedience to proper authority . . . .").

No. 19-10761

responsible for his termination. Collier does not explain how these other individuals acted with a retaliatory intent or how Reyes's retaliatory intent and role as a "critical person involved," rather than Collier's observed insubordination, was the cause of his termination. Accordingly, there is no fact issue regarding the but-for cause of Collier's termination, and Collier has failed to establish that his firing was pretextual.[6]

## IV.

## A.

To establish a hostile-work-environment claim under Title VII, a plaintiff must prove that:

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). The harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and it cannot be "measured in isolation." *Ramsey*, 286 F.3d at 268 (citations omitted).

To determine whether a work environment is actionably hostile, "all of the circumstances must be taken into consideration," such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

---

[6] For these reasons, we need not address Parkland's argument that part of the retaliation claim is time-barred. Nonetheless, Parkland's argument is inapposite. The statutory limitations period does not "bar an employee from using the prior acts as background evidence in support of a timely claim," which Collier does here. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651 (citation omitted). "[T]he work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). Moreover, "[t]he alleged conduct must be more than rude or offensive comments [or] teasing." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (citation omitted).

## B.

Collier relies on three main facts to support his hostile-work-environment claim: (1) a nurse called him "boy"; (2) the N-word was scratched into an elevator, and Parkland failed to removed it for months despite his complaints; and (3) two swastikas were drawn on the walls of a room that he worked in, and Parkland waited eighteen months to paint over them despite his complaints.

As Collier rightly observes, other courts have found that the prolonged duration of racially offensive graffiti, especially once it has been reported, could militate in favor of a hostile-work-environment claim. *See, e.g.*, *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 943 (8th Cir. 2010) ("[T]he key difference between graffiti and a racial slur should not be overlooked: the slur is heard once and vanishes in an instant, while graffiti remains visible until the employer acts to remove it." (internal quotation marks omitted)); *see also EEOC v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 827 (N.D. Tex. 2012) ("[I]f the graffiti remains over an extended period of time, or the employer's response is repeatedly ineffective . . . , a fact question arises as to the reasonableness of the employer's response . . . ." (citing *Tademy v. Union Pac. Corp.*, 614 F.3d

1132, 1149 (10th Cir. 2008))). As Collier notes, the N-word remained for several months before being scratched out, and the swastikas remained for approximately eighteen months, despite Parkland's knowledge.

Moreover, other courts of appeals have found instances where the use of the N-word itself was sufficient to create a hostile work environment. *See, e.g.*, *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("As several courts have recognized, . . . a single *verbal* (or visual) incident can . . . be sufficiently severe to justify a finding of a hostile work environment."); *Rodgers v. W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly 'alter the conditions of employment . . .' than the use of an unambiguously racial epithet such as [the N-word] by a supervisor." (citation omitted)).

Though disturbing, the particular facts of this case— the two instances of racial graffiti and being called "boy"— are insufficient to establish a hostile work environment under our precedent. For example, we have found that the oral utterance of the N-word and other racially derogatory terms, even in the presence of the plaintiff, may be insufficient to establish a hostile work environment. *See, e.g.*, *Dailey v. Shintech, Inc.*, 629 F. App'x 638, 640, 644 (5th Cir. 2015) (no hostile work environment where a coworker called plaintiff a "black little motherf—r" and threatened to "kick his black a—s"); *Frazier v. Sabine River Auth.*, 509 F. App'x 370, 374 (5th Cir. 2013) (finding that use of the N-word, the word "Negreet," and a noose gesture "were isolated and not severe or pervasive enough" to create a hostile work environment); *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924-25 (5th Cir. 1982) (use of the N-word, "coon," and "black boy").

The conduct that Collier complains of was not physically threatening, was not directed at him (except for the nurse's comment), and did not unreasonably interfere with his work performance. *Cf. Hernandez*, 670 F.3d at

No. 19-10761

651. In fact, Collier admitted that the graffiti interfered with his work performance by only one percent. Moreover, Collier does not argue that he felt humiliated by the graffiti, nor would the record support such an assertion. Accordingly, on the record before us, Collier's hostile-work-environment claim fails because it was not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (citation omitted).

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.