# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2020

Lyle W. Cayce
Clerk

No. 20-60264

Dale Michele Stingley,

*Plaintiff—Appellant*,

*versus*

Watson Quality Ford, Jackson, MS; Watson Holding
Company, Incorporated, Jackson, MS, *doing business as*
Watson Quality Ford, Jackson, MS,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CV-888

Before Clement, Ho, and Duncan, *Circuit Judges*.*

Per Curiam:**

---

* Judge Ho concurs in the judgment and joins Parts I, II, III.A, and III.C of the opinion. He agrees with the district court that the employer presented a legitimate non-retaliatory justification for its actions, and that the employee presented no evidence that the employer's stated justification was actually a pretext for retaliation.

** Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60264

Dale Michele Stingley appeals the summary judgment granted Watson Quality Ford on her Title VII claims. We AFFIRM.

## I.

Stingley, an African-American woman, was hired as a sales associate in March 2018 by Watson Quality, a car dealership. In early May, about two months into her tenure, Stingley had an altercation with Cade Usry, a white male colleague. Usry approached Stingley, who was talking with another co-worker, and directed profanities at her. Stingley briefly responded—asking if Usry was "threatening" her—before walking away. Stingley reported the incident both to her superiors and to the human resources department. She also claims that within a week she told a supervisor she was considering legal action related to the incident.

Following that initial confrontation, Stingley alleges Usry began harassing her in various ways including: pacing by her desk on a daily basis, walking up behind her as she arrived at work, waiting for her in the parking lot and then walking in front of her car, and sitting near her during sales meetings. Usry's behavior made Stingley "concerned for her safety." Stingley began photographing and videoing various interactions with co-workers and customers, purportedly to document Usry's harassment. Stingley also took exception to what she judged was lenient disciplinary action meted out to Usry.

In late May 2018, Watson Quality informed Stingley that she had been erroneously overpaid on a prior sale and that the excess would be deducted (or "clawed back") from her next commission. Stingley contends that she had not been overpaid and that Watson Quality was instead retaliating against her for contemplating legal action. Although she claims she had "contacted" the EEOC before this conversation, Stingley did not file a formal EEOC charge until July.

Stingley's efforts to document Usry's purported harassment generated complaints from both co-workers and customers who objected to being photographed and recorded. Her supervisors met with Stingley at the beginning of August and asked her to stop photographing co-workers, but she continued to do so. After Stingley subsequently recorded a customer, a meeting was set for August 13, 2018, again to discuss Stingley's behavior. Stingley ultimately declined to participate in that meeting. Instead, she drafted a note informing Watson Quality she was quitting and would "[s]ee [them] in court."

On September 24, 2018, the EEOC issued a "Dismissal and Notice of Rights" informing Stingley that its investigation was unable to find any violation of the antidiscrimination statutes EEOC enforces. Stingley nevertheless filed suit on December 27, 2018, invoking Title VII and claiming to have suffered actionable "racism, sexism, retaliation[,] and a hostile work environment when employed at Watson Quality Ford." Watson Quality subsequently moved for summary judgment, which the district court granted. Stingley timely appealed.

## II.

Summary judgment is appropriate if the movant establishes "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The summary judgment proponent bears the burden of "point[ing] out the absence of evidence supporting the nonmoving party's case." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (internal quotation marks omitted). If that burden is met, it falls to the nonmovant to

"go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.*

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). "Questions of law are decided just as they are outside of the summary judgment context: *de novo*." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (per curiam).

## III.

## A.

Stingley's allegations of workplace harassment are best understood as advancing a hostile work environment claim under Title VII, 42 U.S.C.A. § 2000e *et seq*. As we have explained:

> To establish a claim of hostile work environment under Title VII, a plaintiff must prove [s]he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [membership in the protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (Clement, J.)).

Stingley's claim necessarily fails because she has produced no evidence that Usry's profanity, nor any of his other allegedly harassing behaviors, were directed at her "because of her race or sex." *See Byrnes v. City of Hattiesburg*, 2016 WL 1090613, at *2 (S.D. Miss. Mar. 18, 2016) ("It is not enough to establish that [a] [p]laintiff is a member of a protected class and that he has been harassed—[the] [p]laintiff must show that he was

harassed *because* of his membership in a protected class." (citing *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007)), *aff'd*, 662 F. App'x 288 (5th Cir. 2016) (per curiam). On the contrary, when asked at her deposition to opine about the motives underlying Usry's behavior, Stingley testified she did not know why he acted the way he did and could not "get inside [Usry's] head." She did, however, profess her belief that Usry was "crazy," and that his behavior might have been a byproduct of mental illness.

Harassment motivated by something other than a plaintiff's membership in a protected class lies beyond the scope of Title VII. *See, e.g.*, *Roof v. Howard Univ.*, 501 F. Supp. 2d 108, 113 (D.D.C. 2007) ("Title VII does not prohibit all forms of workplace harassment [instead] only harassment based on a person's membership in a class protected by Title VII [is prohibited].") (internal quotation marks omitted); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) ("[A] hostile work environment claim requires . . . harassment . . . based on a factor rendered impermissible by Title VII . . . ."). Stingley's own testimony suggests Usry's behavior was not motivated by her sex or race. In her brief, however, she proffers a different explanation, contending that Usry had a "list of simmering grievances" which led to the original outburst, and that the list constitutes "clear evidence of deep seated anti-female (sex based) animus toward Stingley." This purported catalogue of grievances, however, does not appear in the record. "Our inquiry . . . is limited to the summary judgment record and [a] plaintiff[] may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of . . . summary judgment." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc) (per curiam). Stingley's late-arriving assertion therefore cannot undermine the district court's conclusion that Stingley has "present[ed] no evidence, nor . . . even claim[ed], that *any* alleged harassment by Usry was based on Stingley's race or sex."

**B.**

Stingley has also advanced a Title VII retaliation claim. To avoid summary judgment on such a claim, a plaintiff must "make a prima facie showing: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted). As noted, Stingley contends Watson Quality retaliated against her by "clawing back" a commission after she informed her superiors she was considering legal action related to Usry's harassment.

The district court concluded that Stingley's retaliation claim failed at the first prong—that is, she had not engaged in protected activity. Title VII outlines two forms of protected activity: opposition and participation. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009) (explaining that "Title VII['s] antiretaliation provision has two clauses," the "opposition clause" and the "participation clause"); *see also Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) ("Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."). Stingley has plainly not alleged retaliation based on participation, because her comment that she was considering legal action predated the filing of her EEOC charge. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (explaining participation clause is "irrelevant" when alleged retaliation predates plaintiff's filing of an EEOC charge). Thus, her retaliation claim can survive only if her comment falls within Title VII's "opposition" clause. It cannot.

The opposition clause applies when an individual "'resist[s] . . . confront[s] . . . [or] withstand[s]'" practices made unlawful by Title VII. *Crawford*, 555 U.S. at 276 (quoting Webster's New International Dictionary 1710 (2d ed. 1957)); *see also* 42 U.S.C. § 2000e-3(a) (requiring a plaintiff to "oppose[] a[] practice made . . . unlawful . . . by this subchapter"). A viable retaliation claim thus requires more than "opposition alone; it requires opposition *of a practice made unlawful by Title VII*." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016). At her deposition, Stingley explained that a "couple of days" before Watson Quality told her about the claw back, she mentioned to Michael Milnick, her sales manager, that she had "talked to [the] EEOC" and further told Milnick "this is a nation of laws and this is where that's headed." The district court reasoned that these representations did not show protected activity because Stingley "presented no evidence that she complained to Milnick about any discrimination protected by Title VII."

We agree. A plaintiff's generic threat of legal action, making no reference to any kind of discriminatory conduct the statute forbids, is not a sufficient basis for a Title VII retaliation claim. "While no 'magic words' are required" an employee's statements "must in some way allege unlawful discrimination" to "garner[] [the employee] protection under Title VII." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006); *see also Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) ("[T]o bring her speech within Title VII's retaliation protections, '[a plaintiff] has to at least say something to indicate [a protected classification] is an issue. An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints.'") (quoting *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000)).

No. 20-60264

The district court correctly concluded that Stingley failed to show she engaged in protected activity. To be sure, Stingley vaguely mentioned "talking to the EEOC" when speaking to Milnick. But, without a more concrete assertion, Watson Quality had no way of knowing whether Stingley was suggesting she had been discriminated against or was otherwise opposing conduct made unlawful by Title VII. Consequently, Watson Quality cannot have retaliated against Stingley for engaging in protected activity when it is unclear (from Watson Quality's perspective) whether any protected activity actually occurred. And even if Watson Quality understood Stingley's vague allusion to refer to Usry's behavior, her retaliation claim would still fall short because, as discussed above, nothing suggests Usry's harassment was motivated by sex or race.[1]

## C.

Finally, the district court separately addressed Stingley's "additional race discrimination claim[]"—namely, the claim that she had "not [been] allowed to work in internet sales." Stingley's second amended complaint alleges that "only white Sales Representatives were asked or allowed to work in the internet department" and that although she was "equally qualified" neither she nor any other African-American was offered an internet sales position during her five-month tenure at Watson Quality. The district court concluded this claim was foreclosed by Stingley's failure to exhaust her administrative remedies.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court," meaning a plaintiff must

---

[1] Because we affirm on that basis, we need not address the district court's alternative conclusions that Stingley failed to establish causation and failed to rebut Watson Quality's legitimate explanation for the adverse employment action.

"file[] a timely charge with the EEOC and receive[] a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). The universe of claims a plaintiff can properly advance in a Title VII suit is set by the contours of the administrative process. "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008); *see also Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) ("Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.") (internal citation and quotation marks omitted).

That said, courts considering the scope of an EEOC complaint should not be stingy when assessing the litigable claims it encompasses. *See*, *e.g.*, *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) ("[I]t is well established that the scope of an EEOC complaint should not be strictly interpreted.") (internal quotation marks omitted). Thus, "a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the [EEOC].'" *McClain*, 519 F.3d at 273 (quoting *Sanchez*, 431 F.2d at 466); *see also Pacheco*, 448 F.3d at 789 ("[T]his court interprets what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'") (quoting *Sanchez*, 431 F.2d at 466).

Courts assess whether a claim is "like or related" to the underlying EEOC charge through a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and [by] look[ing] slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789. "[The] cause of action for [a] Title VII employment discrimination

[lawsuit] may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 450–51 (5th Cir. 1983); *see Pacheco*, 448 F.3d at 789 n.9 (explaining that for exhaustion purposes an EEOC "administrative charge is construed 'liberally' but, at least for the most part, the desired liberality is achieved by application of the rule that courts will look beyond the scope of the charge's language to the scope of the EEO investigation which can reasonably be expected to grow out of the charge.") (citing *Fellows*, 701 F.2d at 451).

Even under this generous exhaustion standard, however, Stingley's claim fails. Nothing in her underlying EEOC charge remotely relates to the race-discrimination claim Stingley later alleged in district court. Her charge allegations revolved entirely around Usry's alleged harassment and Watson Quality's purported retaliation; they had nothing to do with alleged racial discrimination in filling internet sales positions. Hoping to overcome this shortcoming, Stingley highlights her statement—made in her letter response to Watson Quality's EEOC position statement—that "Watson [Quality] is a good old boys network where white sales people work in the office doing internet sales, and blacks were working outside in the heat getting whatever sales they could." That does not cut it. This isolated reference to "internet sales" contains no elaboration and was nested within a lengthy discussion focused on Stingley's harassment and retaliation claims. It fails to show her internet-sales claim was "like or related" to the distinct allegations and contentions that were the focus of the EEOC administrative proceedings and associated investigation. We therefore agree with the district court that Usry failed to exhaust her race-discrimination claim concerning internet sales positions at Watson Quality.

No. 20-60264

\*   \*   \*

The judgment of the district court is AFFIRMED.